UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THE JEFFERSON COUNTY BOARD OF EDUCATION,<br><br>　　Plaintiff,<br><br>v.<br><br>RAJEENI M.,<br><br>　　Defendant. | }<br>}<br>}<br>}<br>}<br>}<br>}　Case No.: 2:19-CV-1136-RDP<br>}<br>}<br>}<br>}<br>} |

## MEMORANDUM OPINION

This matter is before the court on the Jefferson County Board of Education's ("the Board") Motion to Stay Enforcement. (Doc. # 2). The Motion has been fully briefed (*see* Docs. # 2, 11, 12, 16, 17) and is ripe for decision. After careful review, and for the reasons discussed below, the Board's Motion (Doc. # 2) is due to be granted, and the case is to be remanded back to the hearing officer.

This is an action for review of an administrative proceeding conducted pursuant to the Individuals with Disabilities Education Act ("IDEA"). *See* 20 U.S.C. §§ 1400, 1415(i)(2)(A). The IDEA "offers the States federal funds in exchange for a commitment to provide all 'children with disabilities' individually tailored special education, also known as a 'free appropriate public education' or 'FAPE" *Durbrow v. Cobb Cty. Sch. Dist.*, 887 F.3d 1182, 1189 (11th Cir. 2018) (citing 20 U.S.C. §§ 1400(d)(1)(A), 1412(a)(1)(A)). "The principal vehicle for providing a FAPE is an individualized education program ('IEP') prepared by the child's parents, teachers, and school officials that is reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Id.* (internal quotation marks omitted); *CP v. Leon Cty. Sch. Bd. of Fla.*, 483 F.3d 1151, 1153 (11th Cir. 2007).

1

The IDEA requires states that accept IDEA funds to identify, locate, and evaluate all "children with disabilities" who reside in the state. 20 U.S.C. § 1412(a)(3)(A); *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 245 (2009). This obligation is known as a state's "child-find duty," *Durbrow*, 887 F.3d at 1189, and a local school system's "[f]ailure to locate and evaluate a potentially disabled child constitutes a denial of FAPE." *N.G. v. D.C.*, 556 F. Supp. 2d 11, 16 (D.D.C. 2008). Pursuant to this duty, "[s]chool districts are granted a 'reasonable time' to identify, locate, and evaluate children with disabilities once they are on notice of the student's need for special education." *Id.* at 1196; *D.J.D. ex rel. Driver v. Madison Cty. Bd. of Educ.*, 2018 WL 4283058, at *3 (N.D. Ala. Sept. 7, 2018) ("School boards must assess children 'in all areas of suspected disability' within 60 days of receiving parental consent for the evaluation."). However, the child-find obligation "does not extend to testing every student who is not successful when factors other than a disability would also explain the failure to progress." *D.J.D.*, 2018 WL 4283058, at *3 (citing *Jefferson Cty. Bd. of Educ. v. Lolita S.*, 977 F. Supp. 2d 1091, 1124 (N.D. Ala. 2013), *aff'd*, 581 F. App'x 760 (11th Cir. 2014)) (internal quotation marks omitted).

The IDEA provides parents and children the right "to present complaints regarding placement of the child . . . and to initiate an impartial due process hearing." *Leon Cty. Sch. Bd. of Fla.*, 483 F.2d at 1153; 20 U.S.C. § 1415(f)(1). After the conclusion of an administrative proceeding, "[a] party aggrieved by a hearing officer's findings and decision on a due process complaint shall have the right to bring a civil action concerning the matter in a district court of the United States." *Hoover City Bd. of Educ. v. Leventry*, 2019 WL 4415565, at *9 (N.D. Ala. Sept. 16, 2019); 20 U.S.C, 1415(i)(2)(A).

I. **Factual Background**

The Petitioner in this case, C.M. ("Student"), is seventeen years old and a senior at Clay-

Chalkville High School. (Doc. # 9-1 (SEALED) at 37). Student suffers from juvenile diabetes and, allegedly, Attention Deficit Hyperactive Disorder.[1] (*Id.*). Student's parents are also having him evaluated for Oppositional Defiant Disorder. (*Id.* at 5). Because of his diabetes, a Section 504 plan was developed for Student. (*Id.* at 4, 44). A Section 504 plan "prohibits . . . the exclusion of, denial of benefits to, or discrimination against, an individual solely on the basis of that individual's disability." *H. v. Montgomery Cty. Bd. of Educ.*, 784 F. Supp. 2d 1247, 1251 (M.D. Ala. 2011); 29 U.S.C. § 794(a). Pursuant to Student's Section 504 plan, he is permitted to carry his cell phone with him throughout the day, and he is given extra time to taken tests and complete his work. (Doc. # 9-1 (SEALED) at 16).

In addition to his juvenile diabetes, Student has shown behavioral problems throughout his academic schooling.[2] These behavioral problems include acts of defiance, disruption, frustration, failure to follow instructions, and failure to complete assignments. (Doc. # 9-1 (SEALED) at 5). Student has also undergone "several functional behavioral assessments under his [Section] 504 plan," which documented his "pattern of defiance." (*Id.*; Doc. # 9-2 (SEALED) at 169-70). Student has also been disciplined on numerous occasions for violation of school policy. For instance, in September of his junior year, Student was given a 45-day suspension for failing to put away his cell phone after being instructed to do so. (*Id.* at 7). This, among other infractions, caused the school to send Student to the Jefferson County School System's "alternative school." (*Id.*).

Student's parent argued that "throughout [his] school career, there has been no effort to

---
[1] In the Board's Response to the initial due process complaint, the Board states that it "has been unable to locate any record of such diagnosis or treatment" and, therefore, cannot confirm or deny that Student has been so diagnosed. (Doc. # 9-1 (SEALED) at 44). Student's parent testified that he has never been diagnosed with an intellectual disability. (Doc. # 9-2 (SEALED) at 47).

[2] The hearing officer noted that "[m]edical and educational records of [Student] revealed declining grades and increasing behavior problems beginning in middle school and continuing forward." (Doc. # 9-1 (SEALED) at 6). Student's parent testified that by middle school, he was being "suspended from school at least two times a year." (*Id.*).

provide him with positive behavior supports. . . . [no] behavior plan. . . . [and no suggestion of counseling] by school personnel." (*Id.* at 8). Student's parent also argued that although Student "is permitted to make up work when he returned from [his] absences, he has difficulty . . . because he has not had the lesson explained. He has not been instructed about the materials presented to him. . . . [and] [h]is inability to understand his school work caused him to be frustrated. When he is frustrated, he acts out." (*Id.*). The school, however, argued that when it has offered or suggested a behavior plan, Student's parent has rejected it (*see* Doc. # 9-2 (SEALED) at 155-56), and when Student's teachers have offered him additional assistance, he has not accepted it. (*Id.* at 96-97).

## II. Procedural Background

Here, the aggrieved party is the Jefferson County School Board. The Board filed its appeal in this court seeking relief from the hearing officer's legal and factual determinations arising out of an administrative ruling.[3] (Doc. # 1 at 1, ¶ 1). The relevant facts are discussed below.

On October 30, 2018, Student, by and through his parent, Rajeeni M., initiated an administrative due process hearing against the Jefferson County School Board. (Doc. # 1 at 3, ¶ 7). At the hearing, Student alleged that "the Board failed to comply with the IDEA's 'child find' obligation, and, consequently, that the Board denied . . . Student a 'free appropriate public education' during the two-year period that proceeded the date that the hearing request was initiated." (*Id.*). After the hearing was initiated, the Board conducted a "full and individual initial evaluation" of Student to determine if Student met IDEA eligibility criteria and thus was eligible to receive a "specially designed instruction" under the IDEA. (*Id.* ¶ 8; Doc. # 9-1 (SEALED) at 10).

On January 8, 2019, the IDEA eligibility team "concluded during a meeting that . . . Student

---

[3] The hearing officer was Wesley Romine. (Doc. # 9-1 (SEALED) at 35).

4

met at least one of the 13 disability categories in § 300.8(a)(1) and § 290–809–.03." (*Id.* ¶ 10). The team also concluded that Student's disability adversely affected his "educational performance." (*Id.*). Notwithstanding, "the school representatives of the eligibility team . . . concluded . . . that . . . Student did not *need* 'special education' in the form of 'specially designed instruction.'"[4] (*Id.*) (emphasis added). Consequently, "the school representatives of the eligibility team determined that . . . Student did not meet all IDEA eligibility criteria. (*Id.*).

An administrative due process hearing was conducted on February 13 and 15, 2019, as well as on April 12 and 13, 2019. (Doc. # 1 at 4, ¶ 11). The Board filed a post-hearing brief on May 28, 2019; Student did not file a brief. (*Id.* ¶ 12). On June 5, 2019, the hearing officer entered his Order, determining that:[5]

1. "The eligibility committee improperly added the *need by specialized instruction* as defined in 34 C.F.R. 39(b)(3) and State Department of Education regulation 290–8–9.002(21)(a)3 as a component of eligibility criteria;"[6]

2. That the Board's failure to "engage in an assessment of [Student] for a behavior plan" (to address Student's disruptive and defiant behavior) constituted a violation of the child-find obligation; and

3. Student is "not only disabled, but . . . his disability adversely affects his educational performance in math computations so that specially designed instruction is warranted."[7]

---

[4] The hearing officer nullified this eligibility termination in his Order. (Doc. # 9-1 (SEALED) at 34).

[5] One of the foundations of the hearing officer's conclusions is the fact that Student suffers from juvenile diabetes, which requires him to wear an insulin pump and carry his cell phone at all times in the event he needs to contact his mother. (Doc. # 9-1 (SEALED) at 23). The hearing officer consistently noted that Student's diabetes caused him "frequent absences from school," thus inhibiting him from full academic performance throughout his education. (*Id.* at 24).

[6] The hearing officer stated that such action "lead to a finding of ineligibility for special education when the committee concluded that the true eligibility criteria had been met[;] i.e., a disability that had an adverse effect on [Student's] educational performance." (Doc. # 9-1 (SEALED) at 21).

[7] The hearing officer found that Student's use of a calculator in all of his classes and even on standardized tests qualified him for special education in math computation. (Doc. # 9-1 (SEALED) at 22). The hearing officer also noted that the discrepancy between Student's scores in his "predicted achievement" and "actual performance" in math computation ability "should have compelled an IDEA evaluation under the category of specific learning disability." (*Id.* at 27).

5

(Doc. # 9-1 (SEALED) at 21, 27) (emphasis added). The hearing officer also ordered the following relief:

1. Student is "entitled [to a] compensatory education from the period of October 17, 2017 (the date the school system recognized and suggested that a behavioral intervention plan would be of assistance to [Student]) to October 30, 2018 (the filing of the due process hearing request)." The hearing officer determined that the compensatory education should involve "additional vocational services beyond that normally provided to senior students in the Jefferson County School System." (Doc. # 9-1 (SEALED) at 32);

2. Student "shall be evaluated for a vocational assessment by an appropriate person not employed by the school system . . . . The evaluation shall include a full battery aptitude test, an IQ assessment, an interest inventory and at the discretion of the individual conducting the evaluation such other terms . . . as the evaluator deems necessary or relevant;"[8]

3. Student "shall receive one hour weekly, throughout his Senior year, of counseling as a vocational or compensatory component of his education;"

4. "The school system shall make an effort to enroll [Student] in a mentoring/apprentice type program and/or consideration of paying a third-party to train or instruct [Student] in a vocation or, alternatively, in lieu of such payment, the school system pay [Student] an hourly wage directly so that his training/instruction is at no cost to the mentor/person to whom [Student] is apprenticed;" and

5. "School system personnel shall provide in writing to the parent an explanation/description of its efforts. . . . [which] shall be supplied . . . every 6 weeks for the 2019-2020 school year."

(*Id.* at 31-32).

The Board contests the relief granted, arguing that it is not "appropriate because it is premised on an erroneous conclusion that the January 8th eligibility determination was wrong, and because the relief is otherwise unclear, arbitrary, unsupported by record evidence, and inconsistent." (*Id.* ¶ 16). The Board also argues that "even if a child-find duty was owed, . . .

---

[8] The hearing officer held that before the first day of school for the 2019-2020 school year, the eligibility team shall determine the category of Student's disability. (Doc. 9-1 (SEALED) at 34).

Student did not prove that the Board violated that duty." (*Id.* ¶ 21).

On June 21, 2019, the Board filed its notice of intent to appeal and requested that the hearing officer stay implementation of the relief pending the outcome of the Board's appeal. (*Id.* ¶ 17). Thereafter, on July 18, 2019, the Board filed this civil action and a Motion to Stay Enforcement of the hearing officer's Order pending disposition of its appeal. (Docs. # 1, 2).

### III. Standard of Review

"A stay is an 'intrusion into the ordinary processes of administration and judicial review,' and accordingly 'is not a matter of right, even if irreparable injury might otherwise result to the [moving party].'" *Nken v. Holder*, 556 U.S. 418, 427 (2009). "It is an exercise of judicial discretion. The propriety of its issue is dependent upon the circumstances of the particular case." *Scripps-Howard Radio v. F.C.C.*, 316 U.S. 4, 10-11 (1942). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [judicial] discretion." *Id.* at 433-34; *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005). In considering whether to grant a stay, the court evaluates four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 434.

In assessing the administrative record, a district court reviews a hearing officer's factual findings for clear error and reviews questions of law de novo. *Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1284 (11th Cir. 2008); "A district court judge has discretion to determine the level of deference it will give to the ALJ's findings." *Jefferson Cty. Bd. of Educ. v. S.B.*, 788 F. Supp. 2d 1347, 1350 (N.D. Ala. 2011).

**IV.	Analysis**

The Board argues that the hearing officer: (1) "erred as a matter of law in finding that the school representatives of the eligibility team acted 'improperly' in examining whether Student 'need[ed] special education' in the form of 'specially designed instruction'"; (2) "erred in finding that 'a behavior plan' and 'use of a calculator' constitute 'specially designed instruction' and, thus, 'special education' under the IDEA"; (3) "erred insofar as he found the Student proved that the Student met IDEA eligibility criteria"; (4) "did not apply the correct 'child find' standard under *Durbrow*. . . . [And he] erred to the extent that he found the Student proved the Board violated the IDEA's 'child find' obligation"; and (5) "ordered [relief that] is not appropriate given the Student's individual needs and unique circumstances, and the record evidence does not support the relief that was ordered." (Doc. # 2 at 2-3).

It is clear from the record that the hearing officer applied the incorrect legal analysis in finding that the Board violated its obligations under the IDEA. Eligibility for special education has three components: (1) the child must have a disability under the criteria of the Alabama Administrative Code, (2) the disability must adversely affect the child's educational performance, and (3) the disability must require the need for specially designed instruction. Ala. Admin. Code §§ 290–8–9.02, 290–8–9.03; 34 C.F.R. § 300.306(c)(2); *Alvin v. Ind. Sch. Dist. v. A.D.*, 503 F.3d 378, 383 (5th Cir. 2007); *Marshall Joint Sch. Dist. No. 2 v. C.D.*, 616 F.3d 632, 640-41 (7th Cir. 2010).

The pertinent question here relates to the definition of the term "need" as used in the statute and regulations. The hearing officer held that the Alabama Administrative Code should not be read to include a *requirement* that a student show need, but rather the use of that term should be understood to address "what a disabled child whose disability is impairing the student's

educational performances is entitled to receive (or "needs") when those criteria (disability, adverse educational performance) occur." (*Id.*). Specifically, the hearing officer stated:

> The use of the phrase who, as a result of a disability that adversely affects their educational performance, may . . . (not shall) could be read as mandating the need for specially designed instruction as criteria for eligibility. But, it appears more likely that it should be read as what a disabled child whose disability is impairing the student's educational performances is entitled to receive (or "needs") when those criteria (disability, adverse educational performance) occur.

(Doc. # 9-1 (SEALED) at 20) (internal quotation marks omitted). The hearing officer cited no authority for this interpretation. More significantly, the interpretation conflicts with Eleventh Circuit precedent.

In *Durbrow*, the Eleventh Circuit held that "to establish an entitlement to FAPE, a student . . . must show (1) that her [disability] adversely affects her academic performance; and (2) 'by reason thereof,' *needs* special education." *Id.* at 1193 (emphasis added); 20 U.S.C. § 1401(3)(A)(ii). In *Durbrow*, the student could "not demonstrate a need for special education," even though he suffered from ADHD, because the student's "overall academic performance ranged from mediocre to extraordinary." *Id.* at 1194. Additionally, the Alabama Administrative Code -- which the hearing officer inexplicably found unpersuasive -- states that "[c]hild [f]ind includes a practical method of determining which children with disabilities are currently receiving *needed* special education and related services." Ala. Admin. Code § 290–8–9–.01 (emphasis added). Additionally, a pertinent federal regulation provides that "[i]f a determination is made that a child has a disability *and needs* special education and related services, an IEP must be developed for the child." 34 C.F.R. § 300.306(c)(2) (emphasis added).

With respect to Student's disability, Student's parent focuses heavily on Student's behavioral problems and his frustration with not being able to understand his make-up work. The hearing officer focused on both Student's behavioral problems and his deficiency in mathematical

9

calculations (with an emphasis on the latter). However, the record indicates that Student could still grasp the material, understand the general concepts, and master grade-level standards. (Doc. # 9-1 (SEALED) at 18). The question is whether Student's behavioral problems and academic performance entitle him to specially designed instruction because he *needs* it.

The Eleventh Circuit has held that:

> A student is . . . unlikely to need special education if, *inter alia*: (1) the student meets academic standards; (2) teachers do not recommend special education for the student; (3) the student does not exhibit unusual or alarming conduct warranting special education; and (4) the student demonstrates the capacity to comprehend course material.

*Durbrow*, 887 F.3d at 1193-94. Here, Student generally met academic standards (notwithstanding his two failed math courses),[9] his teachers did not recommend specially designed instruction (*see e.g.*, Doc. # 9-2 (SEALED) at 114), and Student demonstrated his capacity to comprehend course material. One of his teachers testified that Student is "a very social person" and has many friends in the class that distract him. (Doc. # 9-3 (SEALED) at 144). Another teacher testified that Student is "very willing and capable of completing all the content standards for [the] class." (*Id.* at 123). And others stated that "while [Student] seemed to be embarrassed or resistant to teachers' help, if he would allow himself to receive the assistance necessary to complete his work, he could complete his lessons in a satisfactory manner."[10] (Doc. # 9-1 (SEALED) at 9-10).

Additionally, the hearing officer's conclusion that use of a calculator is specially designed instruction is without merit. The hearing officer repeatedly emphasized that specially designed

---

[9] The hearing officer noted that Student's IQ score, notwithstanding one portion of the assessment involving math-type questions, was "similar to the fifty percent of his peers who all fall in the average category." (Doc. # 9-1 (SEALED) at 11). Additionally, the hearing officer noted that, with respect to Student's standardized test scores in the 10th grade, "[a]ll witnesses characterized the standardized score of [Student] to be similar to those of most of his classmates. One witness stated they were within the range of the 'vast majority' of [Student's] fellow students." (*Id.* at 13).

[10] The hearing officer noted that Student's progress reports support these testimonies. (Doc. # 9-1 (SEALED) at 10).

instruction is different in kind than that given to other students. (*Id.* at 22-23). However, Student's teachers testified that every child at the school is permitted to use a calculator on homework and tests. (Doc. # 9-3 (SEALED) at 93; Doc. # 9-2 (SEALED) at 119). Therefore, contrary to the hearing officer's finding, Student's use of a calculator cannot be deemed "specially designed instruction." (Doc. # 9-1 (SEALED) at 23).

The hearing officer also found that Student needs specially designed instruction in the form of a behavioral plan. But, it is not clear from the record why the hearing officer recommended an IEP behavioral plan as opposed to a Section 504 behavioral plan, which, based on the record evidence, is readily available to Student. (*Id.* at 22). Indeed, Student's Section 504 Coordinator has suggested adopting a Section 504 behavioral plan for Student. (*Id.*).

Student failed his freshman and sophomore year math courses and was required to attend summer school (which he completed and passed). He also was required to attend alternative school (due to his disciplinary history and his refusal to follow instruction and ask for help—which, again, was readily available to him). (Doc. # 9-1 (SEALED) at 6-7). Some of Student's teachers testified that his "poor grades were the result of his not doing (or not turning in) the work that he was permitted to make-up." (*Id.* at 10). And, one of Student's teachers testified that Student would act in defiance when asked to put his cell phone away. (Doc. # 9-3 (SEALED) at 155). While the record also reflects that Student exhibits disruptive conduct, there is no indication from the record that his behaviors caused an inability to comprehend course material. (Doc. # 9-1 (SEALED) at 6-7). These circumstances simply do not qualify Student to receive special education or related services under the IDEA. *See D.J.D.*, 2018 WL 4283058, at *3 (noting that the child-find obligation "does not extend to testing every student who is not successful when factors other than a disability would also explain the failure to progress") (citing *Jefferson Cty. Bd. of Educ. v. Lolita*

11

*S.*, 977 F. Supp. 2d 1091, 1124 (N.D. Ala. 2013), *aff'd*, 581 F. App'x 760 (11th Cir. 2014)) (internal quotation marks omitted).

One of the purposes of the IDEA is to ensure that students who suffer from behavioral issues and disruptive behavior receive the specialized training and educational tools needed when such behaviors cause an adverse effect on a student's educational performance. *See W.C. ex rel. Sue C.*, 707 F. Supp. 2d at 1360-61 ("While certainly not the only consideration, the [c]ourt holds that, where a student has behavioral disabilities, academic progress is a significant factor in determining whether that student has received adequate educational benefits."); *L.J. ex rel. N.N.J. v. Sch. Bd. of Broward Cty.*, 927 F.3d 1203 (11th Cir. 2019); *see also* Ala. Admin. Code § 290–8–9–.00(4). However, not every disability or behavioral issue warrants specially designed instruction under the IDEA. A student must *need* specially designed instruction *because* of his disability. Even if a child suffers from a disability, if that student does not *need* specially designed instruction, he is not entitled to FAPE. *See Durbrow*, 887 F.3d at 1195 (holding that a child who suffers from ADHD did not need special education because he "(1) met academic standards, (2) was not recommended for special education by any of his teachers, (3) did not exhibit especially alarming conduct warranting special education, and (4) demonstrated he was learning, while displaying some weaknesses not readily amenable to special-education remediation").

Essentially, if special education would not help a child access the "general curriculum" of the school, then the student will likely not "need" special education. *Id.* Here, the record certainly indicates the conclusion that Student could access and comprehend the "general curriculum" if he applied himself. None of his teachers believed he needed specially designed instruction or would even benefit from it. If Student *needs* anything, it would likely be a behavior plan under his Section 504 plan, notwithstanding the hearing officer's aversion to such suggestion. Or, alternatively,

Student may need a "related service" under the IDEA to develop a behavior plan. However, a related service is not "specially designed instruction" under the IDEA. *See* 34 C.F.R. § 300.8 ("[I]f it is determined, through an appropriate evaluation under §§ 300.304 through 300.311, that a child has one of the disabilities identified in paragraph (a)(1) of this section, but only needs a related service and not special education, the child is *not* a child with a disability under this part.") (emphasis added).

Therefore, it is necessary to remand this case back to the hearing officer to make appropriate determinations under the correct legal standard; *i.e.*, evaluating "need" as an independent inquiry with respect to Student's eligibility for specially designed instruction.

## V. Conclusion

For the reasons stated above, this case is due to be remanded back to the hearing officer for findings consistent with this Opinion. The Board's Motion to Stay (Doc. # 2) is due to be granted to the extent that the hearing officer will be directed to apply the correct legal standard to the claim in this matter. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this November 25, 2019.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE